UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**BEVERLY A. STOKES**                                      **CIVIL ACTION**

**versus**                                                  **NO. 11-2879**

**AVOYELLES CORRECTIONAL CENTER**           **SECTION: "A" (3)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE** as untimely.

Petitioner, Beverly A. Stokes, is a state prisoner incarcerated at the Avoyelles Correctional Center, Cottonport, Louisiana. On September 15, 1999, he pleaded guilty to possession of cocaine under Louisiana law and was sentenced to a term of five years imprisonment; however,

that sentence was suspended, and he was placed on three years active probation.[1] On August 22, 2001, that probation was revoked and the original five-year sentence was imposed.[2]

Over the next few years, petitioner made repeated requests for copies of transcripts and other documents, including a narcotics laboratory report, from the state district court.[3]

On March 31, 2009, petitioner filed with the state district court a motion for correction of an illegal sentence.[4] That motion was denied on April 4, 2009,[5] and his related writ application was denied by the Louisiana Fifth Circuit Court of Appeal on July 28, 2009.[6]

On February 2, 2010, petitioner filed with the state district court an application for post-conviction relief.[7] That application was denied on April 12, 2010.[8] Petitioner's related writ

---

[1] State Rec., Vol. I of II, transcript of September 15, 1999; State Rec., Vol. I of II, minute entry dated September 15, 1999; State Rec., Vol. I of II, guilty plea form.

[2] State Rec., Vol. I of II, minute entries dated August 22, 2001.

[3] The various requests are included in Volume I of the state court record.

[4] State Rec., Vol. I of II. The United States Fifth Circuit Court of Appeals has held that federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned from the state court record with respect to the filings in this case, this Court will simply use the signature date as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed.

[5] State Rec., Vol. I of II, Order dated April 4, 2009.

[6] Stokes v. 24th Judicial District Court, No. 09-KH-445 (La. App. 5th Cir. July 28, 2009); State Rec., Vol. I of II.

[7] State Rec., Vol. I of II.

[8] State Rec., Vol. I of II, Order dated April 12, 2010.

applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on June 22, 2010,[9] and by the Louisiana Supreme Court on August 19, 2011.[10]

On September 20, 2011, petitioner attempted to file with the state district court an application pursuant to 28 U.S.C. § 2254.[11] That application was denied as improperly filed on October 7, 2011, and petitioner was informed that he must seek such relief in federal court.[12]

Also on September 20, 2011, petitioner filed the instant federal application for *habeas corpus* relief.[13] In support of that application, petitioner asserts the following claims:

1. The bill of information on which petitioner's guilty plea was based was defective and his plea was involuntary because he pleaded guilty to a charge not included in the bill of information;

2. Petitioner received ineffective assistance of counsel; and

3. The state withheld a narcotics laboratory report.

---

[9] State v. Stokes, No. 10-KH-436 (La. App. 5th Cir. June 22, 2010); State Rec., Vol. I of II.

[10] State *ex rel.* Stokes v. State, 67 So.3d 1257 (La. 2011) (No. 2010-KH-1757); State Rec., Vol. II of II.

[11] State Rec., Vol. I of II.

[12] State Rec., Vol. I of II, Order dated October 7, 2011.

[13] Rec. Doc. 4.

The state concedes that petitioner meets the "custody" requirement for federal *habeas corpus* purposes[14] and that he has exhausted his state court remedies.[15] However, the state argues that the application should be dismissed as untimely filed.[16] The state is correct for the following reasons.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for the filing of federal *habeas corpus* applications. The method for calculating a petitioner's one-year period is set forth in 28 U.S.C. § 2244(d), which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[14] Rec. Doc. 10, p. 1, n.1.

[15] Rec. Doc. 10, p. 3.

[16] Rec. Doc. 10, pp. 6-7.

Clearly, Subsections (B) and (C) are inapplicable in the instant case, in that petitioner does not allege the existence of a state-created impediment to filing and his claims are not based a constitutional right newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.

However, the parties disagree as to which of the remaining subsections applies. The state argues that Subsection (A) is applicable,[17] while petitioner appears to argue that Subsection (D) applies.[18] For the following reasons, the Court finds that petitioner's federal application is untimely under either of those provisions.

### I. 28 U.S.C. § 2244(d)(1)(A)

As noted, under § 2244(d)(1)(A), a petitioner must bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment became "final." With respect to determining the date of finality, the United States Fifth Circuit Court of Appeals has explained:

> When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a

---

[17] See Rec. Doc. 10, pp. 6-7.

[18] See Rec. Doc. 12, p. 2.

conviction: either direct review is completed or the time to pursue direct review expires).

Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. See Foreman, 383 F.3d at 338-39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693.

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

In the instant case, petitioner pleaded guilty and was sentenced on September 15, 1999. Therefore, his criminal judgment became final for AEDPA purposes no later than September 22, 1999, when his time expired under state law for filing an appeal seeking direct review.[19] Accordingly, pursuant to 28 U.S.C. § 2244(d)(1)(A), the period that he had to file his application for federal *habeas corpus* relief commenced on that date and expired one year later on September 22, 2000,[20] unless that deadline was extended through tolling.[21]

---

[19] At the time of petitioner's plea and sentencing in 1999, La.C.Cr.P. arts. 13 and 914 provided that a defendant had five days, not including legal holidays and half-holidays, to notice his intent to appeal a conviction or sentence. In Louisiana, all Sundays are legal holidays and (except in Washington Parish under certain circumstances) all Saturdays are, depending on the locality, either holidays or half-holidays. La.Rev.Stat.Ann. § 1:55(A). In 1999, September 18 was a Saturday and September 19 was a Sunday; therefore, out of an abundance of caution, this Court will not count those two days against petitioner when calculating the date his criminal judgment became final.

[20] The Court is aware that, because the year 2000 was a leap year, the three-hundred-sixty-fifth day of petitioner's one-year period was September 21, 2000. However, courts have held that it is the "anniversary date" on which the AEDPA's statute of limitations expires, regardless of the existence of an additional day due to a leap year. See, e.g., United States v. Hurst, 322 F.3d 1256, 1261-62 (10th Cir. 2003); United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000); Zeno v. Louisiana, Civ. Action No. 06-4096, 2009 WL 3190461, at *3 n.17 (E.D. La. Sept. 30, 2009).

[21] Out of an abundance of caution, the Court expressly notes that the statute of limitations was not affected by the fact that petitioner was initially placed on probation, because the claims asserted

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). However, petitioner had no such state applications pending at any time during the applicable period of September 22, 1999, through September 22, 2000. Therefore, he clearly is not entitled to statutory tolling.[22]

---

in this federal application challenge the validity of his original conviction, *not* the revocation of his probation. Under Louisiana law, the fact that he was placed on probation did not affect the finality of his original conviction and sentence; his time for appeal ran from the original judgment, not from the judgment revoking his probation. See State v. Patetta, 483 So.2d 1133, 1134 (La. App. 5th Cir. 1986); State v. McDonald, 471 So.2d 834, 836-37 (La. App. 2nd Cir.), writ denied, 475 So.2d 1104 (La. 1985). Because he could have challenged his criminal judgment upon the acceptance of his plea and sentencing, the AEDPA statute of limitations with respect to his instant claims ran from the date his conviction and sentence became final in 1999. See Caldwell v. Dretke, 429 F.3d 521, 529 (5th Cir. 2005); see also Gilson v. Stalder, Civ. Action No. 07-556, 2007 WL 2915165, at *2 n.5 (E.D. La. Oct. 5, 2007).

[22] The Court notes that petitioner subsequently sought state post-conviction relief. However, applications filed *after* the expiration of the federal statute of limitations have no bearing on the timeliness of his federal application. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4, aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Simply put, once the federal limitations period expired, "[t]here was nothing to toll." Butler v. Cain, 533 F.3d 314, 318 (5th Cir. 2008).

Moreover, the Court notes that it has not summarized in this opinion petitioner's numerous requests for transcripts and other documents. It was unnecessary to do so, because such requests do not toll the federal limitations period. It is clear that such requests cannot fairly be considered "application[s] for State post-conviction or other collateral review" for tolling purposes because they are preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence. Higginbotham v. Tanner, Civ. Action No. 10-1130, 2011 WL 3268128, at *1 (E.D. La. July 29, 2011); Parker v. Cain, Civ. Action No. 02-0250, 2002 WL 922383, at *2 n. 22 (E.D. La. May 1, 2002), certificate of appealability denied, No. 03-30107 (5th Cir. June 23, 2003); Boyd v. Ward, Civ. Action No. 01-493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001),

The Court must next consider equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 130 S.Ct. 2549, 2560 (2010). However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 2562 (internal quotation marks omitted); see also Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.[23]

Because petitioner is entitled to neither statutory nor equitable tolling, his federal application for *habeas corpus* relief had to be filed on or before September 22, 2000, in order to be

---

certificate of appealability denied, No. 01-30651 (5th Cir. Aug. 22, 2001). Nevertheless, in any event, the state court record reflects that no such requests were made prior to the expiration of the federal limitations period on September 22, 2000.

[23] The Court notes that petitioner contends that he is innocent. However, the United States Fifth Circuit Court of Appeals has expressly held: "[A] petitioner's claims of actual innocence are relevant to the timeliness of his petition if they justify equitable tolling of the limitations period. We have previously held that they do not." Cousin v. Lensing, 310 F.3d 843, 849 (5th Cir. 2002). It is therefore clear that a claim of actual innocence is insufficient to warrant equitable tolling. Tate v. Parker, 439 Fed. App'x 375, 376 n.1 (5th Cir. 2011); Price v. Cain, Civ. Action No. 11-071, 2011 WL 2937285, at *4 (E.D. La. July 19, 2011); Mattox v. Cain, Civ. Action No. 08-4295, 2011 WL 291283 (E.D. La. Jan. 25, 2011).

timely under § 2244(d)(1)(A). His federal application was not filed until September 20, 2011,[24] and it is therefore untimely under that provision.

## II. 28 U.S.C. § 2244(d)(1)(D)

Apparently realizing that he would be untimely under Subsection (A) and that Subsections (B) and (C) are clearly inapplicable, petitioner appears to argue that it is in fact Subsection (D) which is applicable in this case. As previously noted, § 2244(d)(1)(D) delays the commencement of the AEDPA's statute of limitations until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

Petitioner's argument is muddled at best. However, the gist of his argument seems to be that, although the state represented that it had a narcotics laboratory report proving the criminal charge, petitioner learned many years later that no such report is in the state court record.[25] He

---

[24] "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). That date is not apparent from the face of petitioner's federal application; however, because the application was signed on September 20, 2011, it could not have been delivered to prison officials for mailing prior to that date.

[25] Because petitioner *pleaded guilty* to the charge of possession of cocaine, it is not surprising that the laboratory report was not made a part of his state criminal case. The guilty plea made it unnecessary for the state to offer *any* evidence of guilt, including the report. See, e.g., Smith v. McCotter, 786 F.2d 697, 702-03 (5th Cir. 1986); McQueen v. Tanner, Civ. Action No. 10-3649, 2011 WL 692033, at *4 (E.D. La. Feb. 3, 2011) ("Petitioner, under oath and with the assistance of counsel, *admitted* his guilt by virtue of his plea and testified that he had in fact committed the offense. That plea relieved the state of its obligation to bring forth any of its evidence ...."), adopted, 2011 WL 690532 (E.D. La. Feb. 18, 2011); Patrick v. Dretke, No. 3:01-CV-1683, 2004 WL 915591, at *12 (N.D. Tex. Apr. 28, 2004) ("[B]y his guilty plea, petitioner relieved the State of its burden to put forth evidence sufficient to sustain his conviction. By entering said plea, petitioner waived his right to demand any evidence to sustain his conviction."), adopted, 2004 WL 1108500 (N.D. Tex. May 14, 2004).

appears to argue that the absence of the laboratory report from the record serves as the "factual predicate" for his instant claims.

However, as noted, the statute of limitations under Subsection (D) runs not from when the purported factual predicate *was in fact discovered,* but rather from the point in time at which it *"could have been discovered through the exercise of due diligence."* Even if the absence of the report from the record could properly serve as a "factual predicate" for the purposes of Subsection (D), that predicate could have been discovered many years ago, before petitioner's conviction even became final, if only he had acted with due diligence. The court record was a public record, and petitioner could therefore have discovered its contents at any time. Moreover, as noted, petitioner was initially placed on probation after pleading guilty, and he was not even incarcerated for a substantial period of time after entering his plea. During that time, he could have gone to the courthouse and reviewed his court record. He simply did not do so.[26]

In light of the foregoing, even if Subsection (D) is found to be applicable in this case, it does not aid petitioner. Because petitioner could have discovered the purported "factual predicate" before his conviction even became final, it gains him no additional time beyond that

---

[26] As an aside, the Court notes for petitioner's benefit that his underlying claim concerning the narcotics laboratory report has no merit in any event. Petitioner appears to contend that the state's failure to produce the narcotics laboratory report during the plea proceeding is tantamount to suppression of the report in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). However, failure to offer the report into evidence is not the same as withholding it from the defense. Moreover, it is clear that the report was in fact made available to the defense, because it was expressly referenced by defense counsel during the plea hearing. State Rec., Vol. I of II, transcript of September 15, 1999, p. 4, line 15. Lastly, even if the report had been withheld, which it was not, there would have been no constitutional violation because <u>Brady</u> is simply inapplicable to cases involving a guilty plea. <u>United States v. Ruiz</u>, 536 U.S. 622, 629-33 (2002); <u>United States v. Conroy</u>, 567 F.3d 174, 178-79 (5th Cir. 2009) ("[A] guilty plea precludes the defendant from asserting a <u>Brady</u> violation").

already afforded by Subsection (A). Therefore, petitioner's federal application is still untimely for the reasons previously discussed.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petitions for federal *habeas corpus* relief filed by Beverly A. Stokes be **DISMISSED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[27]

New Orleans, Louisiana, this eighth day of March, 2012.

*[signature]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[27] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.